IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico

Civil Action No. 1:20-cv-02543-DDD

JENNIFER BAKER,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

---

**ORDER AFFIRMING DECISION OF
ADMINISTRATIVE LAW JUDGE**

---

Plaintiff Jennifer Baker suffers from stress urinary incontinence, chronic migraine headaches, depression, cognitive impairments, obesity, and the aftereffects of a surgery for an arteriovenous malformation in her brain. (AR[1] at 17–19.) She filed an application for disability benefits with the Commissioner of Social Security, the Defendant in this case, initially alleging a disability-onset date of November 30, 2012, but later amending that date to October 29, 2017. (*Id.* at 15.) After a hearing, an Administrative Law Judge (ALJ) denied her application, finding that Ms. Baker is not disabled within the meaning of the Social Security Act. (*Id.* at 15.) The Appeals Council denied review of the ALJ's decision, (*id.* at 1), and Ms. Baker filed this appeal under 42 U.S.C. § 405(g). For the following reasons, the Court affirms the decision of the ALJ.

---

[1] AR refers to the Administrative Record below, which is document 16 and its attachments.

1

## I. The ALJ's Decision

The ALJ applied the five-step sequential process that governs disability-benefit determinations to determine that Ms. Baker is not disabled within the meaning of the Act. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991) (citation omitted).

At step one, the ALJ determined that Ms. Baker had not been employed during the time she allegedly became disabled (October 29, 2017) through the date she was last insured for purposes of the Act (December 31, 2017). (AR at 17.) At step two, the ALJ determined that of her medical conditions, only migraines constituted a severe impairment. (*Id.*) Important here, the ALJ determined that although Ms. Baker has "a history of an overactive bladder," it was not severe during the relevant time frame because Ms. Baker had not started seeing a urologist until after the last date insured and that medication had significantly improved her symptoms in any event. (*Id.* at 18.) The ALJ also found that Ms. Baker's mental impairments—a history of depression and borderline intellectual functioning, among other cognitive impairments—were not severe because the only evidence of these impairments came from "one-time examinations not conducted during the relevant period" in conjunction with her initial application for benefits. (*Id.*) A test completed in June 2014 found that she had an IQ score of 72 and low-average cognitive ability. (*Id.*) And a consultative psychological examination performed in September 2017 found moderate impairments in her memory and that she had average intelligence. (*Id.* at 18–19.) Her cognitive function, according to the ALJ, only caused mild limitations in understanding, concentration, and managing herself according to the ALJ. (*Id.* at 19.) The ALJ nevertheless considered Ms. Baker's non-severe impairments in formulating her residual functional capacity as

2

required by the relevant regulations. (*Id.* at 20.) At step three, the ALJ determined that Ms. Baker was not conclusively disabled because her impairments did not match an established listing under the governing regulations. (*Id.* at 21 (citing C.F.R. § 404.1520(d)).)

At step four, the ALJ determined that Ms. Baker had the residual functional capacity to perform light work. The ALJ noted at the outset that Ms. Baker testified she experiences migraines two to three times a week and that they last an average of four hours, cause nausea, and affect her ability to concentrate, interact with others, and complete activities of daily living. (*Id.* at 22.) The ALJ then determined that although Ms. Baker's migraines could reasonably cause her symptoms, Ms. Baker's testimony concerning the intensity and persistence of the symptoms was not entirely consistent with the objective medical evidence in the record. (*Id.* at 24.) The ALJ noted that at a doctor's visit closest-in-time to the alleged onset date of Ms. Baker's disability, she reported that her headaches were resolving, with a migraine occurring only once a month. (*Id.* at 24.) Evidence prior to the alleged onset date showed that although Ms. Baker experienced migraines more frequently from 2012 to 2014, medication helped reduce the number of migraines she experienced and eased her symptoms. (*Id.* at 23.) In 2015, she reported being asymptomatic. (*Id.*) After the date she was last insured, Ms. Baker again reported that her migraines were mostly well controlled with medication. (*Id.*) The ALJ concluded that this evidence did not support Ms. Baker's allegations regarding the persistence of her symptoms. (*Id.* at 22, 24.) The ALJ reasoned that if Ms. Baker's migraines were as significant as she claimed, she would have sought treatment more frequently and her medical records would not have reflected that her migraines were well controlled during the relevant time period. (*Id.* at 25.)

In reaching her conclusion at step four, the ALJ considered the medical opinions of Dr. Paul Barrett, Dr. Rosemary Greensdale, and Dr. Timothy Moser. Dr. Barret opined that Ms. Baker could perform light work given her normal strength, range of motion, and other medical evidence. The ALJ found Dr. Barrett's opinion persuasive because it was consistent with the migraine pain experienced by Ms. Baker. (*Id.*) Dr. Greensdale found that Ms. Baker had no functional limitations. The ALJ found this opinion unpersuasive because it was inconsistent with the evidence that Ms. Baker had difficulty with complex calculations, her memory, and following complex instructions. (*Id.*) Finally, Dr. Moser conducted a consultative exam on Ms. Baker in 2014 and found that she had no standing, walking, or sitting restrictions. (*Id.*) The ALJ found this opinion unpersuasive as inconsistent with migraine pain experienced by Ms. Baker. (*Id.*)

The ALJ concluded that Ms. Baker's "migraines limit [her] to light work." The ALJ also noted that Ms. Baker's "nonsevere impairments, while not discussed in detail . . ., were considered in the formulation of the claimant's residual functional capacity." (*Id.* at 26.) The ALJ then found at step five that, based on Ms. Baker's residual functional capacity, she was capable of performing work she performed in the past in phone ordering and sales. (*Id.*)

Ms. Baker argues that the ALJ made two reversible errors. The Court disagrees.

## II. Standard of Review

To withstand challenge on appeal, the ALJ's ultimate determination must be supported by substantial evidence. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* "It

requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

### III. Incontinence

Ms. Baker first argues that the ALJ erred by concluding that her urinary incontinence was not a severe impairment. The Court disagrees. The ALJ relied on medical evidence that Ms. Baker's urinary incontinence improved significantly with medication and that there was no evidence of long-term incontinence issues that would prevent her from working to determine that it was a mild, not severe, impairment. (AR at 18 (citing AR at 569 (noting that Ms. Baker experienced a "significant improvement" in her symptoms on darifenacin); *see also id.* at 576 (noting "marked improvement" in incontinence at follow-up appointment on January 24, 2018)). True, the ALJ overstated the significance of the timing of when Ms. Baker initially sought medical care for incontinence, when the ALJ said that "the claimant only began to see an urologist in January 2018, long after the date last insured." (*Id.* at 18.) Ms. Baker's date of last insured was December 2017—shortly before when she sought care from the urologist. But the ALJ was correct that when she sought care, "she reported worsening symptoms of a few weeks duration," which supports the ALJ's determination that incontinence was not a consistent and long term issue for Ms. Baker. (*Id.* (citing AR at 569.) And the other medical evidence, cited above, is sufficient support to ALJ's conclusion about the severity of Ms. Baker's incontinence. It therefore is not reversible error.

### IV. Cognitive Dysfunction

Ms. Baker next objects to the ALJ's conclusion that her cognitive issues were not severe. Again, the Court disagrees. The ALJ supported its determination with substantial evidence. Among other things, the ALJ

5

noted that medical evidence in the record showed that Ms. Baker has average intelligence, mild limitations on her memory, and an average "fund of knowledge." (*See* AR at 19 (citing AR at 507).) The ALJ also noted that, although Ms. Baker claimed she was severely limited by her cognitive impairments from most out-of-home activities, the record reflected that she completed an international trip around her disability's alleged onset date, as well as several other long trips during that time. (*Id.* at 19.) And the ALJ found that Ms. Baker had only a mild limitation in managing herself because the medical evidence showed that she had good hygiene and was well groomed. (*Id.*)

Ms. Baker first argues that the ALJ improperly discounted her testimony that her mental impairments caused significant disruptions in her life. Ms. Baker points to her testimony that she stopped going to Bible study and her inability to set a table. This evidence certainly runs counter to the ALJ's determination. But that's not the question before this Court; nor is the question whether the Court would reach the same decision if it were in the ALJ's position. Rather, the Court must determine whether the ALJ's decision was one that a reasonable person could reach. And given the substantial evidence relied on by the ALJ, it is. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.").

Ms. Baker next takes issue with the ALJ's determination that Dr. Robert Madsen's 2017 ratings of her mental impairments was not persuasive. Dr. Madsen examined Ms. Baker and noted, among other things, that Ms. Baker "was oriented to person, place and time"; her "thought content is logical and relevant"; her "thought content is logical and relevant"; and that although she exhibited memory impairments,

6

she has average intelligence and an average knowledge base. (AR at 507.) The ALJ largely credited this aspect of Dr. Madsen's opinion. (*Id.* at 20–21.) What the ALJ found unpersuasive was the next portion of Dr. Madsen's opinion, where he rated Ms. Baker's mental impairments—mostly from moderate to severe. (*Id.* at 508–09.) The ALJ reasonably discounted these ratings because they were mere labels and did not address the relevant issue "about what [a claimant] can still do despite [her] impairment." 20 C.F.R. § 404.1513(a)(2). For example, Dr. Madsen opined that Ms. Baker's ability to maintain "acceptable attendance in the workplace . . . is impaired at a moderate level," (AR at 508), but he did not explain what that moderate limitation meant in practice.

Ms. Baker next argues that the ALJ should have credited a 2014 cognitive exam that found she had low-average to extremely low cognitive abilities. (*See* AR at 315.) But the ALJ reasonably found that this testing was of less probative value because it occurred nearly three years before the alleged disability-onset date and because other evidence closer in time suggested less severe cognitive issues. The ALJ also reasonably concluded that Ms. Baker's lack of mental health treatment supported a finding that her cognitive dysfunction was not severe.

## CONCLUSION

The decision of the ALJ is **AFFIRMED**.

DATED: May 18, 2021.  BY THE COURT:

Daniel D. Domenico
United States District Judge